Scoeield,, J.,
delivered the opinion of the court:
For several years the claimant was a clerk in the auditor’s office of the District of Columbia. His salar3 was fixed at $1,200 a year. At the time of his appointment no agreement was made about the hours of daily service, but by the custom of the office the clerks were required to be in attendance from 9 o’clock a. m. to 4 o’clock p. m. Within these hours, by the force then employed, the business of the office could be readily transacted. But subsequently, during a period of about nine months, beginning in September, 1873, and ending in June, 1874, the office business became so large that the clerks, including the claimant, were required to attend for a greater number of hours. To keep up with the current business they were often compelled to work late at night, and sometimes even on Sunday. On the 29th of November, 1873, the board of public works, as if to meet the emergency, issued an order requiring “all clerks to be at their respective posts of duty between the hours of 9 a. m. and 4 p. m., and as much longer as their services may’be required.”
After that order, claimant continued to work over hours, as he had for a short time before. He estimated the value of his services, over and above the seven hours a day, for the whole nine months, at $250. During this period the affairs of the District were investigated by á committee of Congress. The claimant, having been summoned as a witness, was in attendance upon the committee and away from the duties of his office for eighty-five days. For his attendance as a witness he was paid by Congress $4 a day, a rate somewhat greater than his *385 salary. Other than taking care of the books and papers of the auditor’s office, while being examined by the committee, claimant performed no work for the District. Nevertheless, without deduction for absence, he was paid his full salary. Beckoning the excess and loss of time, and making a general average, it is not certain that his services exceeded seven hours a day.
But waiving any question of fact, and taking the case as he presents it, is he entitled, by law, to additional compensation! The increased labor, it should be observed, pertained strictly to the business of the auditor’s office. It came in such a desultory and irregular manner that it could not well be estimated by the day nor the job. An increase of salary was the only feasible mode of compensation. But he demanded no increase- and performed the duties without objection. At that time beseemed, himself, to understand the law of the case as well as. the remedy; for, being asked, while testifying as a witness in the case, if he made any contract for additional compensation,, he replied: “No; I was directed to do the work, and did it. The work had to be done, if we expected to remain in the officeP We concur in the view of the law then taken by the claimant. When the board of public works required more service, but would not or did not raise his salary, he had no other choice than to resign his office or discharge its duties.
The law governing the case is well stated in 1 Dillon’s Mun. Corp., section 233, as follows :
“It is a well settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties, within the scope of the chartered powers pertaining to the office, are increased, and not his salary. Whenever he considers the compensation inadequate he is at liberty to resign.”
The judgment of the court is that the petition of the claimant be dismissed.
Nott, J., not being present at the hearing, took no part in the decision.